IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MIKE CAPRA,

        Plaintiff,

vs.                                          Case No. 11-4021-JTM

OWNERS INSURANCE COMPANY,

        Defendant.

MEMORANDUM AND ORDER

Plaintiff Mike Capra, the owner of a building in Osage City, Kansas, has brought he present action against defendant Owners Insurance Company, which issued a commercial insurance policy for the building. Capra leased the building to a tenant who operated a restaurant, until a dispute arose over a new air conditioner for the building. Capra contends that the insurer wrongfully refused his claim for damages allegedly caused by the tenant.

Both parties have moved for partial summary judgment. Capra seeks a determination that coverage exists under the policy. Owners seeks a determination that it owes no coverage to Capra for his claims of loss of business income and theft.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988).  The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.

1985).  The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs.  Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*).  One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

### *Findings of Fact*

Auto Owners issued Capra an insurance policy 084613-75542723 for the building located at  609 Market Street in Osage City.

On November 1, 2009, Capra leased the property to Cathy Evans. After extensive renovations to the property, Evans opened a restaurant named Café Thyme in the building. However, a dispute arose between Capra and Evans over the responsibility for the purchase of a new air conditioning unit that was installed in the building.

According to Capra, a provision in the lease made Evans responsible for paying for the new unit. The defendant contends that this responsibility is triggered only if Capra had made a prior written notice to Evans, and suggests that he failed to do so.

Capra claims that, on or about July 31, 2010, Evans "tore out" permanent fixtures and removed his personal property from the premises. Specifically, in his answers to interrogatories, Capra alleges that Evans removed the stainless steel shelves, wrought iron copper top railing, and a metal ceiling hung shelf.

It is uncontroverted that the stainless steel shelves were purchased and installed by Evans. Evans also states that she bought the wrought iron copper top railing, and purchased and installed the metal ceiling hung shelf.

Capra claims that these items became his, however, once they were installed in the building, and that under the lease he has a "lien" on the personal property taken by Evans when they vacated the property. Specifically, Capra claims that he is owed for the following items, either owned by himself or owned by Evans but now subject to a lien:

a. Soiled Dish Table;
b. Clean Dish Table;
c. Soiled Dish Table;
d. Two Deep fat fryers;
e. Gas Griddle;
f. Scale;
g. Prep table;
h. Ladles;
i. Merchandiser;
j. Traulsen Freezer;
k. Wheeled table;
l. Cutting Boards;
m. Oven;
n. Tableware and kitchenware;
o. Hobart Mixer;
p. Salad bar;
q. Tables;
r. Charbroiler;
s. Chairs; and
t. Refrigerator.

Asked to explain his contention that the building was left in a state of disrepair, Capra testified that there were some unrepaired holes in the floor and walls of the building. Further, he stated that Evans had pulled some paneling away in the kitchen, and "jerked the ANSUL system off." However, Evans has stated by affidavit that any such holes were drilled were drilled pursuant to the

lease and with Capra's permission, and that the ANSUL system was carefully removed without causing any damage. Capra's Reply brief does not rebut either averment.

Capra alleges that Evans wrongfully cut up an aluminum door to remove equipment from the building, removed the electrical box and an exterior sign, and stripped gas lines from the building. Evans denies these claims.

Capra has also claimed $20,000 in loss of business income as a result of the loss. Capra admitted that he calculated the loss of business income based on what he believed Evans would have made in a two month period. He has admitted that he did not receive a percentage of the income that Evans generated when the business was open.

Evans did not miss any rent payments. Cathy Evans has testified that all of the items that Capra claims were wrongfully taken from the property belonged to her or her partner, and they had no intention to steal any of them.

No criminal changes have been filed against Evans related to the property they removed, and Evans is unaware of any civil action filed by Capra attempting to recover the property he claims to have an ownership interest in. In fact, law enforcement officers supervised the removal of the property that Capra claims an interest in. Evans is not aware of any lien being filed or presented in regard to the property that was removed from the property.

### *Conclusions of Law*

As to Capra's claim of physical damage to the property, the court finds that material questions of fact preclude any award of summary judgment to the plaintiff. First, while Capra has submitted some exhibits showing the alleged damage, he has done so only in his Reply brief (Dkt. 37), thereby depriving the defendant of the ability to directly respond to them. Second, Evans has explicitly denied her allegations of damage. Given this factual dispute, the court cannot determine whether the damage sustained to the building (if any) was covered under the policy, or excluded by the policy's "wear and tear" exclusion.

As to the plaintiff's theft claim, Owners argues that the claim has no merit, because the property taken did not belong to Capra, and thus he can have no claim for loss due to the "theft." The court finds that a fact question exists as to the ownership of the wrought iron railing and the dirty dish sink. A rational fact finder could conclude that these items were the property of Capra, and that their removal is covered under the insurance policy.

However, the insurer is entitled to summary judgment as to Capra's claim relating to the other items of personal property. The uncontroverted facts establish that these items of personal property belonged to Evans. Paragraph 23 of the lease expressly permitted the removal of "furniture, furnishings, trade fixtures, or equipment" which the tenant installed.[1]

Nor does the purported "lien" on Evan's personal property present any reasonable basis for a claim under the policy. First, the lease itself only provides for a lien for unpaid rent, and then only for "any of Lessee's personal property located on the Leased Premises." It is uncontroverted that Evans was current on her rent payments at the time she moved out of the building. While Capra claims that Evans should have paid additional rent later, the lease cannot create any lien on the property because the removed property and equipment was no longer "located on the Leased Premises." Second and more important, the lien provision contained in the lease is void under Kansas law. *See* K.S.A. 58-2567 (preventing enforcement of any "lien or security interest on behalf of the landlord in the Tenant's household goods, furnishings, fixtures or other personal property").

The court will also grant summary judgment to defendant as to Capra's claim of lost business income. Capra, who alleges that he operated a bar next door to the restaurant, contends that he

---

[1] The plaintiff cites *Board of Educ. Unified School Dist. No. 464 v. Porter*, 676 P.2d 84, 89, 234 Kan. 690, 695 (1984) and *Eaves v. Estes*, 10 Kan. 314, 316-17 (1872) for the proposition that the shelving was intended as a permanent improvement to the property. But *Eaves* simply recognized that whether "property becomes so attached to the freehold as to make it a part thereof is frequently a question of great difficulty[,] oftentimes most embarrassing to determine." 10 Kan. at 316. In resolving this question, the court looks to the nature of the property attached and the intent of the parties. *USD 464,* 234 Kan. at 695. Here, Capra has submitted no evidence as to the intentions of the parties beyond the lease itself. Further, the shelves had independent value, were not tailored specifically to any distinctive aspect of the building, and were readily removed. The court finds that the shelving was not an improvement in which Capra had any property interest protected by the policy.

opened a new restaurant in the subject building two months later, and so is entitled to two months of income similar to that enjoyed by Evans while she operated her café.

But the policy explicitly provides coverage for lost business income due an interruption of business operations conducted by the insured "occurring at the described premises." Capra was not operating a restaurant on the premises prior to Evans' departure in July of 2010, and has no valid claim under the policy. Moreover, the policy contains an express exclusion for any losses caused by the cancellation of a lease.

IT IS ACCORDINGLY ORDERED this 26th day of June, 2012, that the defendant's partial summary judgment motion (Dkt. 34) is granted, such that the court dismisses (1) the plaintiff's claim of lost business income, (2) the plaintiff's claim of theft or property loss (except as to the wrought iron railing and the dirty dish sink); (Dkt. 25) plaintiff's partial summary judgment motion is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE